UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CITIBANK, N.A.,

    Plaintiff,

v.

AH COMPUTER CONSULTING, INC.,

and

ADEL M. ELARABY,

    Defendants.

Civil Action No. TDC-13-3578

**MEMORANDUM OPINION**

This breach of contract case is before the Court on Plaintiff's Motion for Default Judgment. ECF No. 14. Having reviewed the pleadings and supporting documents, the Court finds no hearing necessary. *See* Local Rule 105.6 (D. Md. 2014). For the following reasons, the Motion for Default Judgment is GRANTED.

**BACKGROUND**

On about April 2, 2008, AH Computer Consulting ("AH") executed and delivered to Citibank a Relationship Ready Credit Agreement ("Credit Agreement") for a $750,000 line of credit. Compl. ¶ 8; Ex. 1, ECF No. 1-2. The credit agreement was signed by Defendant Adel Elaraby ("Mr. Elaraby") and his wife Heba Elaraby ("Mrs. Elaraby"), who were Chief Executive Officer and President, respectively, of AH. Compl., Ex. 1 at 4. To secure that line of credit, Mr. Elaraby and Mrs. Elaraby signed a Commercial Security Agreement, which gave Citibank a security interest in AH. Compl. ¶ 9, Ex. 2, ECF No. 1-3. Mr. Elaraby and Mrs. Elaraby also

each signed a Commercial Guaranty, by which they individually agreed to be Guarantors of the debt. Compl. ¶ 10, Exs. 3, 4, ECF Nos. 1-4, 1-5.

The Credit Agreement required AH to "[c]omply with all laws, ordinances, and regulations ... of all governmental authorities applicable to the conduct of AH Computer's properties, businesses and operations," and to "[p]romptly inform [Citibank] in writing of (1) all material adverse changes in Borrower's financial condition, and (2) all existing and all threatened litigation, claims, investigations, administrative proceedings or similar actions" against or affecting the company or its Guarantors. Compl., Ex. 1 at 2. Any failure on the part of AH to abide by these terms constituted a default. *Id.* at 3. The Agreement also specified that any failure on the part of AH's Guarantors to abide by these terms also constituted a default. *Id.* In the event of a default, Citibank was entitled to declare the entire unpaid principal balance of the credit line "immediately due and payable" and all "accrued unpaid interest." *Id.* The Credit Agreement also made AH and its Guarantors responsible for any attorneys' fees and expenses Citibank might incur "to help enforce this Agreement." *Id.*

When AH opened the line of credit with Citibank, it was performing information-technology consulting work for the United States Postal Service ("USPS"). Compl., Ex. 7 ¶ 3, ECF No. 1-8. Beginning in about April 2010 and continuing through about June 2012, Mr. Elaraby and Mrs. Elaraby, on behalf of AH, routinely bribed a USPS official in exchange for prompt payment of AH's consulting fees, and for a variety of confidential information, including access codes that allowed them surreptitiously to listen in on USPS conference calls and gain access to USPS's evaluation system, through which they were able to complete "official" evaluations of AH's performance. *Id.* ¶ 4. In early 2013, based on these bribes, federal criminal charges were filed against AH, Mr. Elaraby, and Mrs. Elaraby in the United States District Court

2

for the Eastern District of Virginia. *See* Compl. ¶¶ 15-17. On April 26, 2013, Mrs. Elaraby entered into a deferred prosecution agreement in exchange for her statement detailing the bribery scheme. Compl. ¶ 17; *see* Ex. 7 (Mrs. Elaraby's "Statement of Facts"). AH and Mr. Elaraby both pleaded guilty to Bribing a Public Official, 18 U.S.C. § 201(b)(1). On July 26, 2013, AH was sentenced to a term of probation and a fine of $75,000. Compl. ¶ 15, Ex. 5, ECF No. 1-6. That same day, Mr. Elaraby was sentenced to a term of imprisonment of 12 months plus one day. Compl. ¶ 16, Ex. 6, ECF No. 1-7.

AH, Mr. Elaraby, and Mrs. Elaraby all failed to notify Citibank of the criminal charges or the resulting convictions. Compl. ¶ 18. Nevertheless, Citibank eventually learned of the criminal proceedings. *See* Compl. ¶ 20. In a letter dated October 11, 2013, Citibank informed AH, Mr. Elaraby, and Mrs. Elaraby that their failure to notify Citibank of the charges and the fact of the convictions each "constitute[d] Events of Default under the Loan Documents." Compl., Ex. 9 at 2, ECF No. 1-10. Citibank explained that, as a result, it was accelerating the loan and that full payment of the outstanding balance was due on October 25, 2013. *Id.* at 2-3. As to that outstanding balance, Citibank noted that as of September 20, 2013, AH owed $750,674.55: $748,646.96 in principal and $2,027.59 in accrued interest. *Id.* at 3. Defendants did not repay the loan by the October 25, 2013 due date. Compl. ¶ 21.

On November 26, 2013, Citibank filed suit against AH, Mr. Elaraby, and Mrs. Elaraby in this Court alleging breach of contract by all three parties and seeking the unpaid balance of the loan. ECF No. 1. As described in the Complaint, by November 6, 2013, that balance was $733,923.14: $733,050.15 in unpaid principal and $872.99 in unpaid accrued interest, with interest continuing to accrue at a per diem rate of $67.58618. Compl. ¶ 22. On December 5, 2013, Mr. Elaraby was served with a summons and a copy of the Complaint. ECF No. 4. On

December 15, 2013, AH was served with a summons and a copy of the Complaint. ECF No. 5. Citibank attempted for several months to locate and serve Mrs. Elaraby, without success. *See* Mem. In Supp. Of Mot. for Ext. of Time, ECF No. 8. Citibank eventually discovered that she had left the country and that she would not consent to waive service. *Id.* ¶¶ 2-3. Accordingly, on May 28, 2014, Citibank voluntarily dismissed its claim against her. ECF Nos. 16, 17.

Neither Mr. Elaraby nor AH filed a responsive pleading by their respective deadlines. After AH and Mr. Elaraby failed to file an answer or otherwise defend, Citibank, on January 28, 2014, filed a Motion for Clerk's Entry of Default against them, which the Clerk granted on March 27, 2014. ECF Nos. 6, 9. On March 28, 2014, the Court (Titus, J.) sent letters to AH and Mr. Elaraby explaining that a default had been entered against them; that Citibank was seeking a judgment in the amount of $733,923.14; that they had 30 days from the letter to dispute the entry of default; and that if they did not act within that time, the Court might enter the requested monetary judgment against them. ECF No. 11. On May 14, 2014, Citibank filed its Motion for Default Judgment. In that Motion, Citibank seeks a judgment against AH and Mr. Elaraby pursuant to Federal Rule of Civil Procedure 55 for the outstanding balance of the loan as of May 12, 2014. Mem. In Supp. Of Mot. for Default J. ¶ 6, ECF No. 15. That balance amounts to $725,376.26: $714,379.71 in unpaid principal and $10,996.55 in unpaid accrued interest.[1] *Id.* Ex. A ¶ 5, ECF No. 15-1. Citibank further seeks any additional interest that has accrued between May 12, 2014 and the date of this judgment. *Id.* at ¶ 6.

---

[1] Citibank does not detail what accounts for the reductions in the outstanding principal balance from the time of its October 11, 2013 letter to the times of the Complaint and the Motion.

## DISCUSSION

### I. Legal Standard

Pursuant to Federal Rule of Civil Procedure 55(a), "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Pursuant to Fed. R. Civ. P. 55(b)(2), after a default has been entered by the clerk, the court may, upon the plaintiff's application and notice to the defaulting party, enter a default judgment. A defendant's default does not, however, automatically entitle the plaintiff to entry of a default judgment; rather, that decision is left to the discretion of the court. *United States v. Moradi*, 673 F.2d 725, 727 (4th Cir. 1982) ("[T]rial judges are vested with discretion which must be liberally exercised, in entering [default] judgments and in providing relief therefrom."); *Dow v. Jones*, 232 F. Supp. 2d 491, 494 (D. Md. 2002). The Fourth Circuit has a "strong policy that cases be decided on their merits," *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993), but default judgment may be appropriate "when the adversary process has been halted because of an essentially unresponsive party." *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 422-23 (D. Md. 2005); *see H. F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe*, 432 F. 2d 689, 691 (D.C. Cir. 1970) ("[T]he default judgment must normally be viewed as available only when the adversary process has been halted because of an essentially unresponsive party. In that instance, the diligent party must be protected lest he be faced with interminable delay and continued uncertainty as to his rights.").

In reviewing a Motion for Default Judgment, the court accepts as true the well-pleaded factual allegations in the complaint relating to liability. *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780–81 (4th Cir. 2001). However, it remains for the court to determine whether these

unchallenged factual allegations constitute a legitimate cause of action. *Id.*; *see also* 10A Fed. Prac. & Proc. Civ. § 2688 (3d ed. Supp. 2010) ("[L]iability is not deemed established simply because of the default ... and the court, in its discretion, may require some proof of the facts that must be established in order to determine liability."). If liability is established, the court must then determine the appropriate amount of damages. *See Ryan*, 253 F.3d at 780–81. As to damages, the court cannot accept as true the factual allegations of the plaintiff, but must instead make an independent determination. *See Dundee Cement Co. v. Howard Pipe & Concrete Products, Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983); *Lawbaugh*, 359 F. Supp. 2d at 422. To do so, the court may conduct an evidentiary hearing, *see* Fed. R. Civ. P. 55(b)(2), or may dispense with a hearing if there is an adequate evidentiary basis in the record from which to calculate an award. *See Pope v. United States*, 323 U.S. 1, 12 (1944) ("It is a familiar practice and an exercise of judicial power for a court upon default, by taking evidence when necessary or by computation from facts of record, to fix the amount which the plaintiff is lawfully entitled to recover and to give judgment accordingly.").

II.   **Choice of Law**

Each of the four contracts at issue contains a choice-of-law provision specifying that the agreement "will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the Commonwealth of Virginia without regard to its conflicts of law provisions." Compl., Ex. 1 at 3; Ex. 2 at 3; Ex. 3 at 2, Ex. 4 at 2. Because this case is a contract claim, and the common law field of contracts has not been preempted by federal statute, Virginia law governs.

### III. Liability

The elements of a breach of contract action are "(1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." *Ulloa v. QSP, Inc.*, 624 S.E. 2d 43, 48 (Va. 2006). It is "equally well-settled that parties to a contract may specify the events or pre-conditions that will trigger a party's right to recover for the other party's breach of their agreement." *Id.*

Under these standards, Citibank's Complaint, taken as true, establishes that AH and Mr. Elaraby breached the terms of the loan. Citibank's Complaint and the attached, signed contracts establish that, beginning in 2008, there was a valid and legally enforceable loan agreement between Citibank and AH, and that Mr. Elaraby and Mrs. Elaraby were Guarantors of that loan. The terms of that loan required AH and Mr. Elaraby, as AH's Guarantor, to "[c]omply with all laws, ordinances, and regulations ... of all governmental authorities applicable to the conduct of AH Computer's properties, businesses and operations." Compl., Ex. 1 at 3. The 2012 convictions of AH and Mr. Elaraby for bribery of a USPS official during the course of AH's contract work establish that AH and Mr. Elaraby did not comply with the law on a matter relating to the company and therefore that they breached the Credit Agreement. Citibank was thus within its rights to exercise its option, specified in the contract, to accelerate the loan and demand full payment of the unpaid principal balance. Compl., Ex. 1 at 3. AH's and Abel's initial and continued failure to pay back that loan constitute a further breach of the contract, one causing damage to Citibank by depriving it of monies owed.

## IV.  Damages

Having found that AH and Mr. Elaraby are liable for breach of contract, the Court turns to the question of damages.  Because this is a straight-forward financial transaction, there is adequate evidentiary basis in the record to determine Citibank's damages, and thus no hearing is necessary.  In its Motion for Default Judgment, Citibank asks for a judgment in the amount of $725,376.26, the balance of the loan as of May 12, 2014, as well as additional interest "through the date of judgment" at the per diem rate of $67.58618.  Mem. In Support of M. for Default J. ¶ 6.  As evidence of these damages, Citibank appends to its motion an Affidavit from the Citibank employee overseeing this account.  That Affidavit establishes that as of May 12, 2014, there was an outstanding balance of $725,376.26 on the loan, consisting of $714,379.71 in unpaid principal and $10,996.55 in accrued, unpaid interest.  Mem. In Support of M. for Default J., Ex. A, ¶ 5.  The Affidavit also confirms that interest continues to accrue on the balance at the per diem rate of $67.58618.  *Id.* ¶ 6.  There have been 192 days between the date of the filing of the motion and the date of judgment during which an additional $12,976.55 in interest has accrued, which results in a total amount owed of $738,352.81.

In the Complaint, however, Citibank sought judgment "in the amount of $733,923.14, consisting of $733,050.14 in unpaid principal and $879.99 in accrued and unpaid interest." Compl. ¶ 38(a).[2]  Where a complaint specifies the amount of damages sought, the plaintiff is limited to entry of a default judgment in that amount.  *In re Genesys Data Technologies, Inc.*, 204 F.3d 124, 132 (4th Cir.2000) ("When a complaint demands a specific amount of damages, courts have generally held that a default judgment cannot award additional damages ... because

---

[2] In its Complaint, Citibank also indicated it was seeking an award of attorneys' fees and costs.  Compl. ¶ 22.  However, in its Motion, Citibank does not renew that argument, nor does it provide any information about or evidence of those fees.

8

the defendant could not reasonably have expected that his damages would exceed that amount."). Thus, the Court will enter default judgment in favor of Citibank and against AH and Mr. Elaraby, who are jointly and severally liable, in the amount sought in the complaint: $733,923.14.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Default Judgment is granted. A separate order follows.

Date: November 20, 2014

THEODORE D. CHUANG
United States District Judge